# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Salamatu Forte,

          Plaintiff,

v.

Waterford Green Limited Partnership, a
Minnesota limited partnership; Redevco,
Inc., a Minnesota corporation; and Dawn
Metcalf, individually and as agent of
Waterford Green Limited Partnership and
Redevco, Inc.,

          Defendants.

Civil No. 01-1706 (DWF/AJB)

**MEMORANDUM
OPINION AND ORDER**

---

Jordan S. Kushner, Esq., Kushner Law Office, 636 Sexton Building, 529 Seventh Street South, Minneapolis, MN 55415, counsel for Plaintiff.

Patrick J. Sauter, Esq., and Leondra M. Hanson, Esq., Rider Bennett Egan & Arundel, 2000 Metro Center, 333 South Seventh Street, Minneapolis, MN 55402, counsel for Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on December 13, 2002, pursuant to Defendants' Motion for Summary Judgment. In her Complaint, Plaintiff alleges familial status discrimination, race discrimination, reprisal discrimination, and defamation. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## Background

In her Complaint, Plaintiff Salamatu Forte ("Forte") describes herself as a black woman of West African origin. Forte has one school-age child, a daughter.

MAR 0 4 2003
FILED_____
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

Forte began renting an apartment at the Waterford Green apartment complex in January

of 1998; it is undisputed that Forte received a Section 8 housing subsidy to assist her with rent

payments throughout her tenancy at Waterford Green. The Waterford Green apartment complex

is owned by Defendant Waterford Green Limited Partnership and managed by Defendant

Redevco, Inc. Defendant Dawn Metcalf was at all times relevant to this suit the resident site

manager at Waterford Green.

The lease between Forte and Waterford Green provides that residents must not allow

minor children to run or play in the stairways or other common areas.[1] Forte asserts that she

received numerous written and oral complaints because her child was playing in the common

areas without supervision.[2] She further asserts that white children were not similarly restricted.

However, the basis for her assertion is that she saw white children playing and waiting for the

school bus without supervision, and she inferred that the white parents must not be getting notes

and complaints; she admits, however, that she has no first-hand knowledge of whether the white

parents received notes and that she never asked any white parents whether they received oral or

written complaints.

On December 15, 1998, and on April 12, 1999, the fire sprinklers in Forte's apartment

discharged. On both occasions, the fire department was dispatched to the apartment. The fire

---

[1]      Defendants assert that this policy was, at some point, changed to require only that
minor children be supervised when playing in common areas. There is a dispute of fact as to
when this change took place and whether Forte was ever notified of the change. The Court does
note that, in her deposition, Forte indicates that Metcalf told her that children needed to be
supervised, not that children could not be in common areas at all. (Forte Depo. at 27-28.)

[2]      Defendants contend that many of the written notices were directed generally to the
parents of all school-age children and that they did not single out any particular child or parent.

department reports for both incidents state that the cause of the sprinkler discharge cannot be determined; with respect to the latter event, the report specifically states that there was no fire.[3]

Forte made several maintenance requests during her tenure at Waterford Green. Forte asserts that the maintenance was routine, but Defendants contend that the problems were the result of Forte's failure to care for the property and her misuse of various appliances. On several occasions, Waterford Green charged Forte for the repairs. Forte asserts that other tenants were not charged for maintenance. Specifically, the record contains a declaration by Lunye Smith, another Waterford Green resident, who claims that she was never charged for maintenance calls. Ms. Smith and all the residents of Ms. Smith's apartment are African-American.

Forte asserts that Defendant Metcalf once left a note on Forte's car. The note allegedly stated "black African bitch park your car right." Forte claims to have recognized Metcalf's handwriting, but she allegedly gave the note to Metcalf and it is gone.

In March of 2000, Waterford Green informed its tenants that the parking facility was due for a cleaning. Residents were instructed to remove their cars and other belongings from the parking spots. Forte admits that she stored some boxes in her parking spot and that she did not move her car for the cleaning (because it was not working at the time). Forte has provided the

---

[3]     Defendant Metcalf indicates that she spoke with fire personnel after each incident. With respect to the first incident, she was allegedly told that the sprinkler was discharged as a result of an iron being held close to the sprinkler head. With respect to the second incident, she was allegedly told that the sprinkler was deliberately discharged. However, these representations are hearsay, and there is no direct evidence from the fire department as to the causes of the incidents other than their official reports.

Similarly, Forte has submitted declarations from Charles Murphy and Lunye Smith, her neighbors, that state that the fire department told them that the sprinkler was defective and that it has discharged once before Forte lived in the apartment. The declarations go on to state that the former tenant of Forte's apartment told Charles Murphy that the tenant experienced damage from the malfunctioning sprinkler. Again, all of this information is inadmissible hearsay.

Court with a picture purportedly of several other parking spaces with boxes being stored in them. However, as Defendants note, Forte has not identified who used that space and has offered no evidence that the person using the space was not reprimanded for the storage.

In late spring or early summer of 2000, Defendants notified Forte that they would not renew her lease. According to Forte, when she called Dawn Metcalf about the nonrenewal notice, Metcalf told her it was because of her failure to remove storage items from her parking space. When Forte confronted Metcalf about the other residents storing items in their parking spaces, Metcalf allegedly responded "I'm not talking about anybody else but you black ass African girl."

Forte vacated Waterford Green in June of 2000. Defendants retained a portion of Forte's security deposit for "cleaning" and "carpet cleaning." Through a conciliation court action in Dakota County, Forte did recover a portion of the retained security deposit.

After Forte left Waterford Green, she sought to obtain housing elsewhere. Defendant Dawn Metcalf filled out a number of references for apartment complexes and community development agencies. In those references, Metcalf alleged that Forte was a poor housekeeper, that she was unhappy at Waterford Green, that there was a fire in her apartment, that she did not adequately supervise her child, and that Defendants would not rent to Forte again.[4] Forte was unable to secure another apartment; one of her rejections notes her bad credit and the bad reference, while another notes only bad credit as the reason for rejecting her application.

---

[4] It should be noted that Metcalf did not make all of these assertions in all of the references. Rather, her criticisms of Forte are inconsistent at best.

4

In late August or early September of 2000, Forte became pregnant. The record indicates that the pregnancy was troubled and that, at some point before December of 2000 (quite probably within the first two months after conception), the fetus died. Forte lost the child in December of 2000. In this action, Forte asserts that she lost her child due to stress related to her homelessness and that, as a result, her miscarriage was a result of Defendants' actions. This assessment is her own and not supported by any medical documentation or expert opinion.

The record contains an affidavit by Geneva Ezeagu, who represented Forte in this matter early in the proceedings. In the affidavit, Ms. Ezeagu states that on August 1, 2000, she telephoned Waterford Green and reached their answering machine. The recorded message allegedly indicated that Waterford Green was not, at that time, accepting applications for Section 8 housing.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

5

The moving party bears the burden of showing that there is no genuine issue of material

fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The

nonmoving party must demonstrate the existence of specific facts in the record which create a

genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party

opposing a properly supported motion for summary judgment may not rest upon mere allegations

or denials, but must set forth specific facts showing that there is a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

## 2.    Race Discrimination Claims

Forte has alleged racial discrimination in violation of 42 U.S.C. § 1981 and the Fair

Housing Act, 42 U.S.C. § 3604(b).[5] Defendants assert that Forte has failed to meet her prima

facie case for discrimination. With respect to the vast majority of the allegedly discriminatory

conduct in the Complaint, the Court agrees.

Specifically, with respect to Forte's claims that the maintenance and minor child policies

of the complex were applied to her in a racially discriminatory manner, the Court finds that there

is no evidence to support a prima facie case. Forte's alleged evidence that the minor child policy

was applied in a racially discriminatory manner consists of her unsupported and speculative

assertions, and those of three neighbors, that white parents were not expected to follow the

policy. The fact that these witnesses observed white children playing unsupervised, however,

---

[5]    In their brief, Defendants assert that any claim Forte might have had for race
discrimination and public assistance discrimination pursuant to the Minnesota Human Rights Act
would be time-barred. In response, Forte concedes that she is not asserting a claim for race
discrimination under the Minnesota Human Rights Act. Forte does not address the allegation of
public assistance discrimination. The Court notes, however, that any such claim would, in fact,
be time-barred and should be dismissed.

does not support the conclusion that the Defendants never contacted the parents of these children or sanctioned them in any way. Similarly, Forte's evidence of discriminatory application of the maintenance policy is the testimony of another African-American resident that she and her partner were not charged for maintenance visits. Such evidence may indicate that Forte was treated differently than other residents, but it does not support the conclusion that such disparate treatment was based on her race.

Forte also seems to assert that Defendants' retention of a portion of her security deposit was race-based. However, there is absolutely no evidence of this fact. While Defendants may have wrongfully retained a portion of the deposit, there is no evidence that the decision to do so was predicated on Forte's race. Forte has not pointed to a single other resident, of any race, who was given a full refund of his or her security deposit, much less shown that such resident left his or her apartment in a condition similar to Forte's.

The only conduct for which Forte has produced any evidence of racial animus is the Defendants' decision to decline renewal of Forte's lease. Forte's allegation that other tenants who used their parking spaces for storage were not reprimanded suffers from the same defect as her claims about the minor child policy: the fact that other people violated the policy does not support the inference that these other people did so with impunity. Indeed, in this instance, the record does not indicate the race of the other tenants violating the parking policies. However, Forte asserts that, when she contacted Dawn Metcalf about the non-renewal of her lease, Metcalf called her a "black ass African girl." This statement, in the context of a discussion about the non-renewal of Forte's lease, is sufficient to support an inference of a causal nexus between the

7

action taken against Forte–the non-renewal of her lease–and her race.[6] Although the Defendants

have offered legitimate, non-discriminatory reasons for the decision, it is for a fact-finder to

determine whether such legitimate reasons are merely pretext.[7]

Accordingly, the Court denies Defendants' motion with respect to Forte's claim that the

non-renewal of her lease was racially discriminatory, but grants the motion as to all other

allegedly discriminatory conduct.[8]

## 3.    Familial Status Discrimination

Forte alleged familial status discrimination in violation of the Fair Housing Act,

42 U.S.C. § 3604(b). Specifically, she asserts that the Defendants' minor child policy, that

forbade minor children from playing in the common areas of the complex, violates the Fair

Housing Act. Assuming that the policy at issue does, or did, violate the Fair Housing Act, the

Court agrees that Forte's claim is nevertheless untenable because there is no justiciable case or

controversy. *See Sporn v. Ocean Colony Condominium Ass'n*, 173 F. Supp. 2d 244, 252-53

---

[6]    In their brief, Defendants seem to concede that the ultimate decision about Forte's continued tenancy was made by Dawn Metcalf.

[7]    While the Court finds that the record creates a genuine issue of material fact, the Court notes that Forte may have a difficult time persuading a jury that the reasons articulated by the Defendants are merely pretext for racial discrimination. The Court notes the Defendants' claims that over one-third of the residents of Waterford Green are members of some racial minority. It may be difficult to persuade a jury that the managers of Waterford Green would single out Forte for discriminatory "eviction" while continuing to maintain such a diverse community within the complex.

[8]    Defendants have moved the Court to preclude Forte from seeking damages related to her miscarriage. While the record before the Court strongly suggests that Forte will be unable to make a sufficient offer of proof to submit such damages to a jury, the Court nevertheless notes that Defendants' motion is more appropriately brought as a motion *in limine* in the context of pretrial preparation.

8

(D.N.J. 2001) (dismissing plaintiff's claims for familial status discrimination in the absence of damages or available injunctive relief). Forte has not alleged any damage as a result of the policy; indeed, she does not assert that the application or enforcement of the minor child policy had anything to do with her other "difficulties" with Defendants. Moreover, because Forte no longer lives at Waterford Green and is thus no longer subject to the minor child policy, she can make no claim for injunctive relief. Accordingly, whether the policy is unlawful or not, Defendants are entitled to summary judgment due to the lack of a justiciable controversy.

## 4.    Reprisal

Forte has brought claims for reprisal in violation of the Minnesota Human Rights Act, the Fair Housing Act, and 42 U.S.C. § 1981. Specifically, Forte asserts that the non-renewal of her lease, Defendants' retention of a portion of her security deposit, and Defendants' negative rental references were all retaliatory actions.

Although the Court believes that Forte will have a difficult time persuading a jury that Defendants' actions constitute reprisal, the Court must concede that Forte has made out a prima facie case. Forte took action that is protected by statute, both in threatening legal action in a letter to Metcalf and in actually pursuing such action by filing a claim with the Minnesota Department of Human Rights. Defendants took adverse action against Forte, specifically by declining to renew her lease, by retaining a portion of her security deposit, and by issuing negative rental references.[9] Finally, the proximity in time between the protected actions taken by

---

[9]    Defendants assert that the rental reference forms were filled out only with true information. However, much of the "true information" was in the nature of subjective assessments of Forte's housekeeping and demeanor. Moreover, at least one of the forms indicated that there was a fire in Forte's apartment, a fact which remains in dispute.

Forte and the adverse actions taken by Defendants could conceivably give rise to an inference of a causal connection between the two.

Again, the Court notes that it is a long way between surviving a motion for summary judgment and prevailing at a trial on the merits, and, quite frankly, the Court is skeptical of Forte's ability to make that leap. But, for purposes of the motion before the Court, the Court finds that summary judgment is inappropriate.

**5.      Defamation**

Forte has brought a claim for defamation based upon the negative rental references Defendants provided for her. Specifically, Defendants alleged that Forte failed to supervise her child, that she allowed additional people to live in her apartment, and that there was a fire in her apartment during her tenancy. To establish a claim for defamation, Forte must prove that Defendants made false statements of fact about her that tended to harm her reputation and lower her in the esteem of the community. *See Ferrell v. Cross*, 557 N.W.2d 560 (Minn. 1997).

Defendants assert that the first two allegedly defamatory statements are true and, therefore, not actionable. *See Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 889 (Minn. 1986). However, there is no evidence in the record to indicate that the statements are true; rather, the record creates a genuine issue of material fact as to whether these statements are true.

Similarly, Defendants assert that Metcalf's claim about the fire is protected by qualified privilege. To be privileged, a statement "must be made in good faith and must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997). In the case before the Court, the Defendants

10

assert that they have demonstrated the existence of a qualified privilege. Specifically, *inter alia*, they assert that the statement was based upon reasonable or probable cause by virtue of Metcalf's investigation and inquiry into the accuracy of the statement. The Court does not agree.

Metcalf claims that she asked the fire department about the cause of the sprinkler discharges and that, on both occasions, the fire department indicated that the discharges were the result of some activity akin to a fire (a hot iron in one case and unspecified deliberate conduct in the other). The fact that Metcalf asked the fire department about the sprinkler incidents does not create probable cause to support her claim of a fire. For the Court to find qualified privilege, the Court would have to find that the fire department actually told Metcalf that a fire had occurred. The only evidence to that effect, however, is rank hearsay. In short, there is no *admissible* evidence to support a legal conclusion that Defendants had probable cause to believe the statement to be true.

## 6.     Conclusion

Too often plaintiffs consider a victory at the summary judgment stage to be a bright harbinger of things to come. The Court wishes to emphasize to the parties in this case that a party may survive a motion for summary judgment on the barest assertion of supporting facts, on the most tenuous of evidence. The fact that a defendant does not prevail as a matter of law does not mean that the defendant faces an uphill battle at trial; rather, there are many cases in which summary judgment is inappropriate and yet the likelihood of a plaintiff's verdict at trial is negligible at best.

The Court urges the parties to read the Court's opinion carefully, to realistically assess the strengths and weaknesses of their relative positions, and to strongly consider the predilections

11

and proclivities of Minnesota juries. In the context of such reasoned and objective deliberation, the Court hopes that the parties will be able to resolve this dispute without engaging in the costly and unpredictable exercise of a jury trial.

For the reasons stated, **IT IS HEREBY ORDERED:**

1.	Defendants' Motion for Summary Judgment (Doc. No. 12) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.	Defendants' Motion for Summary Judgment as to Plaintiff's claims of discrimination in violation of the Minnesota Human Rights Act is **GRANTED** and any such claims are **DISMISSED WITH PREJUDICE**;

b.	Defendants' Motion for Summary Judgment as to Plaintiff's claims for familial status discrimination is **GRANTED** and any such claims are **DISMISSED WITH PREJUDICE**;

c.	Defendants' Motion for Summary Judgment as to Plaintiff's claims for reprisal in violation of the Fair Housing Act, the Minnesota Human Rights Act, and 42 U.S.C. § 1981 is **DENIED**;

d.	Defendants' Motion for Summary Judgment as to Plaintiff's claim for defamation is **DENIED**;

e.	Defendants' Motion for Summary Judgment as to Plaintiff's claim for race discrimination is **GRANTED IN PART** and **DENIED IN PART** consistent with the above memorandum.

Dated: March 4, 2003

_____
DONOVAN W. FRANK
Judge of United States District Court

12